Our next case today, number 241191, United States v. Luis Miguel Garcia-Toro. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning. May it please the court? I am Assistant Federal Public Defender Franco Perez and I am appearing on behalf of the appellant, Luis Miguel Garcia-Toro. May I have two minutes of rebuttable time, please? You may. Thank you. This case is about a broken promise. In exchange for Mr. Garcia's guilty plea to simple possession of a chip clock pistol, the government agreed to recommend a guideline sentence. But when the time came, it filed a sentencing memorandum that read like a blueprint for an upward variance. Complete with tallies- But it is a blueprint for an upward variance, but so is the PSR. And the government specifically is saying the specific sentence it's requesting. So it's, isn't that so? It's requesting the sentence that was agreed upon. The fact that the PSR may have reflected something else, I'm not sure that it implicates the same thing. Forget the PSR, but notwithstanding what you call the blueprint for an upward variance, the government is still requesting what was agreed upon in the plea agreement. And that was resolved, I think, in Mojica Ramos. The court there had held, the district court, held that when the government supplies factors that it says support a sentence under a plea agreement, then there can be no breach. And this court rejected that argument because I think the test, what we actually look at, is whether the government's substantive arguments undermine the stated recommendation. Go ahead. Why aren't the government's substantive arguments here consistent with a sentence at the upper end of the plea agreement? I think that part of the problem with the government is that these are arguments that are made routinely to vary upward by courts and that are submitted by the government. And the government is a party to every single sentencing hearing in the district court- Let me ask the flip side of the question. When your office, and I have to say it's been the policy of your office for years to write excellent sentencing memorandum, and you request the lower end or as low as you can, but in those memos you put from A to Z that is mitigating and many times district judges, including myself in the past, have found that convincing and without you asking for less have gone below, but that doesn't cause a breach. The government's never saying defense is breaching the plea agreement. And I think part of the reason is the defense sentencing memorandums, at least generally, what you would see in a sentencing memorandum would pertain to the facts of the case. And that's not entirely what the government did here. If we look at its sentencing memorandum, what it does is it introduces these extraneous factors, these community concerns of mass violence. Your office memorandum, as I say in general terms, sometimes introduces policy questions and sometimes why the guidelines shouldn't be followed. And again, you're stuck by your guideline recommendation, but you're still presenting, and I have to say your office has presented before me many very good arguments that have convinced me to even go below and sometimes even convince the government that you were right. So what's, you know, as long as you're specifically requesting your specific sentence, you know. I think that when we do ask the court to apply a departure or a specific guideline provision, there is no problem with the plea agreement. So it's permitted under the plea agreement. I don't think that defense counsel would submit a sentence. No, I mean, but sometimes district court, as I said, I'm going back to my experience. I would vary downwards because your memos contain so much policy information or excellent information, sometimes not even the pre-sentence report, and other factors that the court, you know, can consider going below. And you're still requesting maybe 17 months, and sometimes your client's got probation or got something else. What's good for the goose, good for the gander, as long as you specifically request the sentence within the plea agreement. Well, again, Judge Helpe, I would just push back a little bit on that, given Mojica Ramos and its holding. But also, again, when we submit sentencing memorandum, it's related to the facts of the case. The case law says the government can introduce relevant facts. It can correct errors of defense counsel or misstatements of the law. But it cannot do. So the government then, from your perspective, can't say, Judge, there are these public policy concerns factors we want to bring to your attention, and we're using them strictly for you to go to the upper end of the guideline. So you're saying the government can't do that? I think that when the government, in this case, no, when the government signals that the levels of violence are exceptional, then my client represents this exceptional threat, and it's only a matter of time before he commits another offense, and then speculates about the purpose of having the firearm. It tells the district court higher sentences deterred. The only way to cure this is to impose very serious consequences upon people who commit this crime. I think it's unlikely. So this particular defendant, this is the second offense? Yes, Your Honor. And so the government says that a within-guideline sentence was imposed before without a variance, and it did not deter. How do you respond to that? I think that the government could have said maybe a low end of the guideline sentence did not deter, and so we want to try the high end now. I think it's a very nuanced argument, but when you look at the totality, I think it all adds up, and it suggests to the But the government has a right to explain why it doesn't want a lower end, it wants a higher end. And the government could also say, in this case, we agree to a lower end because X, Y, Z, and that wouldn't be improper either. Policy reasons, you know, they should have a tie to the client or the case. I don't know. Here, isn't it relevant? Weren't you arguing for the low end? Yes, Your Honor. So they had to make some argument if they want the high end, and the plea agreement contemplated they could make arguments for the high end. Of course, and this is a sliver-wide range, and had the government just stuck to the facts? What's the line drawing? That's what we're trying to figure out. When does it go beyond being permissible to argue for the higher end? In some of the cases where there's language, which isn't, you're right, they mouth the words you've got to give the sentence within the range. And they don't expressly say, but we're recommending nonetheless go above the range. We've still found breach, but we've had statements that are in line with you give whatever you want, all that kind of talk. That's caused us concern. So what is the language here? I understand you're saying that the references to violence mimic the kind of arguments that have been relied on for variances. Suppose I didn't think that was a very convincing ground for concluding there was a breach. Is there some statement beyond that that really makes it say the only way to read this is they're telling him, yeah, I'm saying go to the high end, but what I'm really saying is vary. Where is that? You point out that they cite upward variance cases, but he didn't cite, the government doesn't cite to the portions of those that supported the upward variance. So where is there something in the government's arguments to the district court that crossed that line that tracks what we've said in the past has been a breach? I think that because guideline sentence are for mine run cases or cases that fall within the heartland, the line in this case is crossed when it just becomes, it reframes the offense completely into this parable of public collapse. It also, I think when the government says, you know, guideline sentence didn't work last time, when the government says violent offenders, which Mr. Garcia is not recidivate at a higher rate, it sends the message that this is someone who is violent. That's the key. The thing that's most troubling to you is that a guideline sentence didn't work before. And calling for very serious consequences. And when you add the whole thing up, I do think it shows the breach. But isn't an upper end of the guideline a serious consequence, you know, at sentencing? I think given the context, and I'm not sure that that's enough. The government, you know, I cannot say that these materials that the government put before the court would have made the court stop. But let me also say, contrary to, you mentioned Mojica Ramos, correct? Yes, Your Honor. In that case, the prosecutor presented, I think it was like 300, you know, photographs, additional photographs of firearms, drugs, everything found there. And the government also said this is an exceptional case. You would agree that no additional evidence was presented here, and the government never said this is exceptional. That did not happen here. The government did not expressly say that this was an exceptional case, and there was no evidence. It was based on these extraneous factors. Thank you. Thank you. Mr. Counsel, will Attorney for Appley please come up and introduce yourself on the record to begin? Good morning, Chief Judge Barron. May it please the Court, Greg Conner for the United States. The government's asking that this court affirm because there was no breach of the plea agreement, much less a plain error breach, which Garcia does not address. In response to the two memoranda that Garcia filed, in which he made mitigation arguments, cited downward variance cases, and asked for a low-end recommended sentence, the government filed a memorandum to support its high-end recommendation. Under several of this court's cases, when there is a split under the plea agreement in the recommendations given, both parties are allowed to support their recommendation with argument. And the plea agreements in this district specifically say the government can request up to the high-end, defense can request the high-end, or there's like a range, and it's clear in the plea agreement. There's no dispute as to what can be requested either way, correct? That's correct. And this court's cases also pointed out that there's no limiting portion of the plea agreements that says the government is not allowed to address certain sentencing considerations. So it's something that the panel had mentioned earlier, is that not only was the government not backtracking from this agreement, it made the required recommendation many times. What this court said in Uyles Rosario was often, or excuse me, early, often, and throughout the sentencing. So four times in the sentencing memo, and then twice in its brief remarks at the sentencing hearing. Now, there are a lot of cases that were brought up in the briefs. I'm going to recommend that the panel begin with two. You don't disagree that possession in and of itself is not a violent offense, do you? There's a portion of the guidelines that later will consider it a violent offense. But generally speaking, I agree with your premise, and I agree that the cases regarding variances have characterized it as nonviolent. It's nonviolent, but all of the policy considerations that are inserted in the government's memo talks about the violence, the prevalent violence in Puerto Rico, folks getting killed, recidivism. That doesn't seem to be something directly connected to the personal attributes of this particular defendant. Well, the way this court has characterized it previously is that this is a relevant consideration for a deterrence analysis. And if you look at page 48 of the appendix, if you look at page 51, 57, 58, what we're saying is we know this is a relevant sentencing consideration. We have factored that into, along with the individual characteristics of the defendant, his offense conduct, and everything that we find troubling about this case, we have factored all of that in, and we have come out with a recommendation which is at the high end. So each time we're addressing those sentencing considerations, we're telling the court, if you consider the individual circumstances of this case along the backdrop of gun violence that we find concerning, we think that warrants the high end here. And under this court's cases, that's perfectly permissible. In fact, the two cases I brought up, the same thing happened, which is why I think that's the simplest way to address Garcia's argument. Counsel, let me also, to get into context, we're dealing with a machine gun at this time, correct? Yes. So, okay, briefly, I think two cases make this a simple appeal. Aponte Colón and Ubiles Rosario. In Aponte Colón, both of these cases had split recommendations where the government was permitted to support its higher recommendation. Both involved sentencing memoranda in which the government made its arguments regarding the specific case and referenced the backdrop of high gun violence on the island. Aponte Colón was a case where both parties were allowed to argue for, were required to advocate for a sentence above the guidelines. In Ubiles Rosario, the government was required to make a low end recommendation. So, really, Garcia's case falls in between those two because the government was required to make a high end recommendation. It is simply illogical to say that the government could refer to the important sentencing consideration of community considerations, Puerto Rican gun violence, when the sentence, when the government recommendation is at the low end, when it's above the guidelines, but not in the middle of those two. I don't see how that logic can work under this court's precedent. Aponte Colón is also useful for, just so I understand, our case law about the problem with relying on community characteristics, which I would say is not the clearest, I understand, given where we left it after the en banc ruling. But Rivera Barrios and the like remains the controlling precedent, which I take it you agree with. Not that you agree with the precedent, but that you agree that it's the controlling precedent. In those cases, when we raise concerns about community characteristics, that was all in the context of above guideline sentences, correct? Or is that wrong? I mean, it was an appeal from above guideline sentence, but those cases say that if there aren't other aggravating circumstances, you can't rely on that for an above guideline sentence. I understand for an above guideline sentence. Right. We haven't taken the position that you can't rely on it for a within guideline sentence in setting the range, have we? No. In fact, I think that's the consequence of saying you have to have other aggravating circumstances. Absent those other aggravating circumstances, you can say all you want about Puerto Rican gun violence. It can't justify a variance without. Right. But what I'm suggesting is consistent with what you're arguing. I'm trying to understand whether we are, in fact, saying the same thing, that even under the precedents like Rivera Barrios, there's nothing wrong with perhaps too much reliance on community characteristics if all it's being used for is to explain where within the guideline range the sentence falls. Or is that your understanding, or is our precedent not that clear? I think I am agreeing with what you're saying, and I just want to point out that all of this is relatively moot in this case because the district court judge does not do that in his explanation here. It's true. We made that argument. That is not what the district court did. No, but what's relevant here, we don't particularly care what the district court did because we're trying to figure out whether there's a breach of the plea agreement. And the more you're arguing in a way that's perfectly permissible in arguing for a within guideline sentence, even if it would be impermissible for a variant sentence, the more it seems consistent with the idea you didn't breach the agreement. Again, I think I'm agreeing with you, and I will point out that Ubiles Rosario allowed the government to make that type of argument for the low end. So it's not just within the guidelines. It's at the very bottom of the guidelines, and that's in Ubiles where the sky was the limit with the sentence. Counsel, let me just follow up on that. Here it's clear the defense is not arguing that Judge Bezosa committed substantive error by going upwards in a variance. Correct, right? Yes. So if they're not challenging that upward sentence, why should, as Chief Judge Barron said, why then within a guide, you know, when the government argues within the guidelines, would there be the error or there would be no error in your position? We believe there would be no error, and that is especially true. Can you just address the last point that was made by your opposing counsel, which is the reference in the government's argument to we gave him a guideline sentence last time, and it didn't work out. I think I'm not sure that's the exact quote, but if that's the sum and substance of what was said in the government's argument, they suggest that the fair implication or inference of that is you can't give a guideline sentence this time. What's your response to that argument? That there are a series of inaccuracies in the way his briefs describe what took place in the record. Basically, that didn't happen. So I guess if the government addressed his history and characteristics, which included a prior offense, the language we used was that his conviction, arrest, and supervised release did not deter the second offense. That's standard and mandatory 3550. There wasn't a reference to a guideline sentence in that argument? That's correct. We never referred to his prior sentence as within the guidelines. By the way, we also never denounced the guidelines, which he accuses us of doing. We never made any argument regarding a within-guidelines sentence, let alone to say that was inadequate. Hint, hint, you should go above the guidelines this time. And the criminal history, it's clear from the pre-sentence report, because you can't look at your memorandum in a vacuum. The judge also looks at pre-sentence report, and a lot of that information is consistent with the pre-sentence report while you're raising. That's true. And I do want to address, I'm almost out of time, but briefly, on this idea that we were somehow casting doubt on the sufficiency of the guidelines, the reply actually quotes the government, this is page 7, and says that the government cast, quote, mere guideline, end quote, sentences as inadequate to meet the moment. And when I first read that, I actually did think that could be a concern along the lines of denouncing the guidelines. So perhaps my friend on the other side can address this. I cannot find that quote. And especially in a serious charge of misconduct against the government, I'm wondering when or if the government actually said that. The bottom line is, there was no breach. There definitely wasn't a plain error breach, and we're asking this court to affirm. Thank you. Thank you, counsel. Attorney Perez-Redondo, you have a two-minute rebuttal. Good morning once more. Deputy Franco Perez for the appellant. I want to address two quick points by the government. The first one is the government's attempt to compare this case to Aponte Colón and Ubilés Rosario. Critically, in Aponte Colón, the parties, the plea agreement, contemplated an upward variance, given that a more serious charge had been dismissed, and so there was that benefit. And so when the government submitted, when the court says it's okay to accept those community concerns or rely on them as a government sentencing memorandum or argument, I think what it's recognizing is that those factors do tend to drive the upward variance. I would also point out Aponte Colón talks about presenting facts in neutral terms. A lot of what the government is saying here has to do with, well, this was information that was in the PSR. Yes, but there is no editorializing, and that is one of the things that is most troubling about the government's PSR. What about this last concern that we all seem to be pondering up here, which is did the government suggest that the last sentence within the range didn't deter? Was that said? I think that what the government said, the actual quote is closer to the prior arrest, conviction, and supervised release term is part of the sentence, did not actually deter him from possessing this. Well, isn't that a correct statement? He committed the second offense, and that's all in the pre-sentence report. The violation, his conviction, all that information is in the pre-sentence report. Without any editorializing, I mean, again, looking at it in isolation, it may not seem like much, but when every single factor is pointing upward, and it's relying on different factors that district courts do tend to consider. So then the prosecutor would be precluded from saying he violated his supervised release term. He committed another offense. This is what he got the first time. The government can't do that then? No, and that is not something that we take issue with, Your Honor, just the presentation of facts. The problem, again, is that it's not presented in neutral terms. There's editorializing, and there's inflammatory language. Thank you very much. Thank you, Your Honors. Thank you, Counsel. That concludes arguments in this case.